Wilber versus Hepp. Ms. Comfort, your audio is not on yet. I think it is now. Thank you, Ms. Comfort. You may proceed. Good morning, Your Honor. This is Assistant Attorney General Lisa Comfort on behalf of the appellant cross-respondent Randall Hepp. Your Honors, the District Court in this case crafted its own rule of constitutional law. It ignored the last reason state court decision on the issue. It cherry-picked the record to find that the trial court violated this new rule of constitutional law. It applied the wrong harmless error standard, and it granted habeas relief because it disagreed with the trial court about whether the shackles were warranted. So, in this case, the District Court... I'm going to start you right off, if you don't mind. It seems to me at this point that neither the trial judge nor the state appellate court ever expressly considered or explained why visible — and that's what we have to zero in on — visible restraints were necessary. Visibility is the aspect of restraining a defendant that most obviously gives rise to prejudice. And it isn't otherwise clear to me on this record why visible shackling was truly necessary. Mr. Wilbur wasn't representing himself, for example, such that he had any need to move around the courtroom. So, why doesn't the failure to explain the need for visible restraints amount to an unreasonable application of death? And when you respond, if you would, I would very much appreciate it. Take into consideration what the trial judge, some of the things she said, because reading the record, for me, it's as if the judge was making sure that the jury would think he was a dangerous person by allowing those shackles to be seen. Even the prosecution intelligently offered a sports jacket. It could have been a sports jacket, it could have been a sweater over the shackles. Why the visible shackles? Well, Your Honor, I think the beginning of that, of my answer to that question, has to go back to what the holding of DEC actually is. Because DEC holds at 633 that the Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination in the exercise of its discretion that they are justified by a state interest specific to a particular trial. So, I feel like where the district court in particular erred in this case is that it read that holding as stating that the trial court must specifically explain why the shackles must be visible in every case. And that is not what the Supreme Court held in DEC. What the Supreme Court held in DEC was that physical restraints do not amount to a due process violation if the trial court, in the exercise of its discretion, explains on the record why the restraints that had been previously used were insufficient. And I think in this case, we have a very obvious record as to why this trial court had concerns about both Wilbur and his supporters posing a security or a decorum risk. In particular, the fact that he got in a physical fistfight with four deputies while he was wearing a stun belt. I mean, the district court had already tried all of the non-visible options that it had at its disposal. And it had made a very extensive record here about the ongoing conduct and concerning statements that Wilbur had been making. The ongoing conduct from his supporters that could be construed as tampering with the witnesses or threatening the court staff. And there are also parts of the record where it makes very clear that there was some concerning behavior going on between Wilbur and some of the witnesses. Oscar Niles, during his testimony, the judge sent the jury out and made a note that at one point in his testimony, Oscar Niles had winked at Wilbur and Wilbur began laughing. I think that it's hard on the paper record to really get a great feel for the entire atmosphere of this trial. And I think that in considering, and I'm not, I don't mean to say that it's possible that the trial court overstepped its boundaries here, but the question for a habeas petition is whether the court of appeals determination that the trial court reasonably looked at the facts of record and applied the correct law was one that was so outside the boundaries of Supreme Court precedent that no fair-minded jurist could disagree that the court of appeals determination was wrong. Counsel, the jury was sequestered as well, were they not at some point? Yes, they were. And that was after the third day of trial. I believe it was either the third day or the fourth day. The trial court noticed that many people from the gallery who had been supporting Wilbur had been going out and talking to the witnesses after their testimony. There had been some threatening statements made to the court, reporter on that. I don't know that we ever figured out who these people were, but they had been in and out of the courtroom. And so the judge sequestered the jury because she was, she feared for both their safety and the integrity of the trial. And so then we also have all these concerning statements that Wilbur made to the deputies asking very detailed questions about his route into the the public had access to that route, whether there was a locked door or an unlocked door. Wilbur just made it very clear that he had no intention of abiding by what our judicial system requires. And I don't think the trial court was out of order in being concerned. I do agree that some of the trial court statements, it's very clear that the trial court had reached the end of its rope by the end of this trial in trying to ensure that the trial progressed in a safe and orderly fashion. I don't disagree with that. But the question for the district court here wasn't whether it agreed with the trial court or even whether it agreed with the court of appeals. The question for the district court in this matter was whether or not the court of appeals reasonably found an appropriate exercise of discretion here. And because an appropriate exercise of discretion is such a wide ranging legal principle, indeed, even this court on direct review won't review or won't reverse a trial court's exercise of discretion merely because it disagrees with the opinion. The question is, did this comport with recognized conventions of legal reasoning? She surely could have insisted. On shackles. It's the fact that she made sure, she made sure that the jury would see the shackles. That is concerning to me. Look, Deck and all the other cases recognize that visible restraints are inherently prejudicial. He was visibly restrained at a critical stage of the trial. Both parties were marshaling their arguments as to guilt or innocence. The trial judge was helping with this. Why do you think we can't presume prejudice? Well, Your Honor, I think that also goes back to the procedural posture of this case. Of course, viewing defendant in shackles has been held to be inherently prejudicial. But the Supreme Court in Deck also stated that that can amount to harmless error, even on direct review. And the standard for harmless error there is whether or not there's reasonable doubt that the error affected the verdict. But here on habeas review, the standard is much more lenient. And it is the petitioner's burden to show that this actually prejudiced him. And while it's difficult to assess actual prejudice from this kind of a violation where we can't pull the jury and say, well, what did you think about this? I think then what you have to do is look to the strength of the state's case. And the state's case in this was very strong. We had multiple eyewitnesses. And yes, some of them got up there and walked their statements back on the stand. But in Wisconsin, the prior inconsistent statement by a witness is considered substantive evidence. And so all of the police officers that took these statements from these people got on the stand and testified very clearly, particularly Jeronek Diaz. Had Jeronek told police that he actually saw Wilbur get a gun out and pointed at Diaz's head, and then he ducked down because he was afraid he was going to be shot himself. You just brought something up that could you please address the evidence as to whether Mr. Diaz was shot with a revolver or a semi-automatic and how that bears on the sufficiency question? Certainly, Your Honor. Mark Simonson, the ballistics and firearms expert at trial was asked about that. And he testified that there are certain... Sorry about that. I guess I'm not moving enough. There are certain parts or certain weapons that can be manufactured that are revolvers that have what is called a lug on the bottom of the barrel. And that's a weight on the barrel that makes the barrel much thicker and makes it resemble a semi-automatic weapon. And he also testified that all three of the manufacturers who make revolvers that come in black and chrome colors, which is what everyone testified that they saw, make these kinds of weapons with this lug weight on the barrel. And I think we also have to keep in mind that this was a very contentious altercation that happened in a matter of a few seconds where everyone was hyped up and afraid for their lives. I don't know that we can really be all that confident in everyone's ability to identify whether it was a revolver or a semi-automatic weapon in that circumstance. Your Honor, I believe I reserve the rest of my time for rebuttal. So thank you. Thank you, Counselor. Mr. Hennick, you may proceed. Your audio is off. Yes, there. I apologize, Your Honor. I was having some problems turning the microphone on. May it please the Court, my name is Robert Hennick and I represent Mr. Wilbur on this consolidated these appeals. There are three issues raised here. The first, of course, deals with what the Court has been discussing so far with the state, and that's the trial court's unexplained and unjustified requirement that Wilbur's restraints be visible to the jury. Forgive me, Mr. Hennick. Do we know as a factual matter where Mr. Wilbur's hands were as he sat at the table, the draped table? Would they have been visible to the jury with his hands in his lap, for example? Or was he shackled to the chair in such a way that his hands were necessarily visible? What does the record tell us on that? The only thing we specifically have the record is the trial attorney's descriptions of the restraints. We also have the color photograph. The prosecutor was offered to actually get a camera so we could have a color photograph of the defendant sitting in the wheelchair the way he appeared to the jury. That color photograph is attached as the final pages of our appendix on the electronic version of our brief. That must have been a staged photograph, I assume, done after the fact. I can't remember whether that was during the motion for mistrial or whether that was in the I just don't remember which time that was, but it certainly reflects the way he looked at the time, exactly how he was sitting at the time the jury was looking. I don't think that there was any dispute at the time that he was visible and that these were visible to the jury. Obviously, the arm restraints, the two-inch bands that were around both arms attaching it to the wheelchair, those were certainly visible to the jury no matter whether his hands were. I would note that the circuit court judge, when she was discussing the added restraints, did not say anything about the arm bands when she was trying to justify the added restraints. She was focusing more on the shackles and the hand restraints, the wrist restraints. I want to make clear that we are not challenging the decision to require additional restraints. That is something that possibly could be challenged, but given the restrictions on habeas relief under the anti-terrorism amendments, that is not something that is worth challenging in this case because at worst, it is debatable. What we are challenging here and what we have challenged all the way through is the trial court's unexplained and unjustified decision to make those restraints visible to the jury. Now, the state is arguing that nothing in DECC requires an explanation for making the restraints visible. I strongly disagree. We start with the quote from DECC that the state was quoting, that due process prohibits the use of physical restraints visible to the jury absent a trial court determination in the exercise of its discretion that they are justified in an interest or by an interest specific to a particular trial. The court did not say that physical restraints or did not limit its requirement of an explanation to physical restraints. It is physical restraints visible to the jury. There is a reason why there are those two separate inquiries. Number one, are the physical restraints necessary? Number two, is it necessary that the physical restraints be visible to the jury? The reason for that is that there are two different interests involved. As the court in DECC explained, one interest is an interest that it traced all the way back to Blackstone, which is a defendant's not being physically restrained during trial. And the court in DECC pointed out that such restraints interfere with the defendant's ability to communicate with counsel and also is just an affront to the dignity of the court, a separate interest. And the interest that is involved in making the restraints visible is the right to a fair trial. And the court in DECC pointed out the separate interest citing to, I think it was Holbrook, I don't have this right here, but pointing out that visible shackling, another quote from DECC, visible shackling undermines presumption of innocence and the related fairness of the process. It suggests to the jury that the justice system itself sees a need to separate a defendant from the community at large. In other words, it risks telling the jury that this particular defendant is dangerous because the court believes he's dangerous. The court in DECC further disagreeing with the state's argument here at page 34 to 35 specifically held when addressing Missouri's argument that the circuit court or trial judge in that case had made an adequate decision or explanation for its decision to require the restraints. The court specifically held that one of the failings of that court was its failure to quote, explain why if shackles were necessary, he chose not to provide for shackles that the jury could not see, close quotes. So it's clear, I believe absolutely clear that DECC requires an explanation for why the shackles had to be visible. In this case, the trial court provided no such explanation. In fact, when the prosecutor suggested getting a sport coat or something to make the added restraints not visible to the jury, the judge simply replied, that's not necessary. That's not- Just a minute. As far as being in the wheelchair. Yes. Is that something that was there because of some other disability or was that part of the confinement? That was part of the confinement. So he was not normally using a wheelchair. Correct. Correct. And that I understand wearing a sport coat would not change that, but it would conceal the vast majority of things. The judge, the US Supreme Court decision dealing with, I think it might be forward, dealing with having additional security in the courtroom, pointed out that there's a difference between security measures, which the jury inherently would interpret as being an indication that the defendant is dangerous and security measures like having additional security personnel in the courtroom that the jury would not necessarily view as an indication of something about the defendant. We're not saying that the wheelchair itself is something that would have itself had not seen anything during the seven day trial that would suggest that this individual was in fact dangerous. And then all of a sudden for closing argument- Counsel, they saw nothing to indicate he might be dangerous. Did he speak out and yell at the judge and certain things like that? Well, he responded to the judge outside the presence of the jury on the first day. He objected to the judge's decision, his perception that she was being biased that was outside the presence of the jury. Everything else- None of his conduct was before the jury. That type of conduct was before the jury. I think there might've been some rolling of eyes. And I think that the state referred to laughing at some point when one witness was testifying. But the things that the state court relied on as believing that he was dangerous was not in the presence of the jury. That was back in the bullpen where he used inappropriate and profane language and had some kind of unspecified physical confrontation with the bailiffs. That was not in the presence of the jury. They didn't know about that. Thank you. So we have the trial court, which made no effort to explain the visible nature of the restraints. We have the court of appeals, who again, focused entirely on the additional restraints that they were reasonable without making any attempt to either justify the fact that they were visible or to explain how the circuit court's decision somehow complied with the requirements of  restraints were justified in concluding that the state appellate court decision was contrary to or an unreasonable application of the fact. In terms of harmless error, the state is absolutely correct that number one, this is a de novo issue. The state court did not address harmlessness. Number two, the state is correct that the Brecht and O'Neill standard applies. That is what we argued in the district court. And that is the standard that the district court ultimately applied in granting the state's motion for a stay pending the appeal in this case and concluding that even under the Brecht standard, given the extreme weakness of the state's case, given the physical evidence, countering the state's theory that Wilbur had actually filed the fatal shot, that even under the stronger standard of harmlessness, that it could not be said that there was no substantial or injurious effect or influence on the jury's verdict. Here we have, starting with the fact that visual restraints are inherently prejudicial, Supreme Court has held that and it deprives the defendant of the presumption. In a sense, we have the fact that these visual restraints suggest dangerousness, which plays right into the state's theory that Mr. Wilbur was somebody who's very dangerous and totally out of control. We have the fact that not a single witness testified that they saw Wilbur shoot the fatal shot. We have the strongest evidence in the state's case being Mr. Torres, who did not see Diaz, who shot Diaz. We have the alleged statement by Geranic Diaz that he saw Wilbur pointing a gun at the victim, but Geranic Diaz specifically denied either saying that or seeing that when he testified at trial and growth. So under all those circumstances, the idea that the state's case was strong or even was entirely accurate in concluding that even under the Brecht and O'Neill standards, that it could not be said that there was no substantial or injurious effect on the jury's verdict. I see that I'm almost out of time, so I'm not going to try going into other issues in the case I would rely on. I have one follow-up question, though. I want to make sure he was in the wheelchair as part of a restraint, correct? Correct. And so that's unusual for a jury to see right from the start. Correct. But as in Holbrook, where they had no reason to know why the additional officers were there, they had no reason to know why he was in a wheelchair, whether he had some kind of physical problem on that particular day. If you do not see the actual restraints to the wheelchair, the jury is not necessarily going to jump to a conclusion that it has something to do with restraints. We, as people who have been involved in the system, might recognize that immediately as something dealing with restraints or something dealing with misconduct. But a jury of laypersons is not necessarily going to know that. So I think that the Holbrook standard would apply there, that the jury wouldn't necessarily jump to the conclusion simply based on the wheelchair. So I thank the court. Thank you, Mr. Herning. Ms. Gunford? Your audio. Audio. Sorry about that. Thank you. Just a few things that I'd like to briefly touch on. First of all, the portion that Wilbur has repeatedly relied on here in DEC is not the holding. It is very clearly dicta of the Supreme Court, where the Supreme Court was applying the trial court has to make findings about the defendant being dangerous or an escape risk. And in DEC, the court in DEC never made any of those findings. In fact, the defendant in DEC had never acted out in any way. And the court simply imposed those shackles for the capital penalty phase because he had already been convicted of a crime. And so the Supreme Court in DEC, when it was reversing, said, well, you know, it doesn't appear that the court understood that this was something that this was a discretionary decision where it had to make some kind of findings. And that is when it said, and if it was going to impose additional shackles, it didn't say why it needed to use these particular types. Of course, that has been followed by many other cases. Yes, Your Honor. But it's also true that I think we have to remember that this case is on habeas review, and we're supposed to only be concerned with whether this was reasonable. And as this court has stated, I'm going to butcher this, Mendiola versus Shomig, when the constitutional standard is flexible and the state court takes the rule seriously and produces an answer within the range of defensible positions, 2254 D1 requires the federal court to deny the petition. And the bottom line here is the court of appeals decision was within the, it took the rule seriously. It looked at the Wisconsin state cases that impose the exact same rule as DEC. It looked to the record and it noted that the circuit court had put a large amount of statements on record, noting all of these very concerning statements and acts by Wilbur and said that was an appropriate exercise of discretion. And even if we would have reached a different decision, that's not what we're here to review for. And that comports with conventions of legal reasoning about how an appellate court reviews an discretionary decision. And in that case, 2254 requires a federal court to deny the petition. And I feel like Wilbur and the district court here solely relied on the trial court and didn't really give any real evaluation to what the court of appeals did with the record that it had in front of it. And finally, just briefly, the state's case was not weak at all. And Mr. Wilbur has simply glossed over all of the evidence that supported the state's case. The state's experts explained how the physical evidence could line up with Wilbur being the shooter. And we had multiple statements from the police saying that all of the witnesses pointed the finger at Wilbur before they walked those statements back on the stand. So thank you, your honors. Thanks. Thanks to both counsel and the cases taken under advisement.